**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| GILBERTO VELEZ<br>    Plaintiff<br><br>        V.<br><br>UNITED STATES GOVERNMENT,<br>ALEJANDRO N. MAYORKAS<br>IN HIS OFFICIAL CAPACITY AS<br>SECRETARY OF THE DEPARTMENT OF<br>HOMELAND SECURITY, JANE DOE,<br>RICHARD ROE, MIKEY MOE, INSURANCE<br>COMPANY XYZ<br><br>    Defendant | CIVIL NO.<br><br>PLAINTIFF DEMANDS<br>A JURY TRIAL |

**COMPLAINT**

TO THE HONORABLE COURT:

   COMES NOW Plaintiff, through the undersigned counsel and respectfully alleges and prays as follows:

**I.   JURISDICTION AND VENUE**

   This Court has jurisdiction over this action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-(a), et seq. as amended and, pursuant to Sec. 1983 of the Civil Rights Act of 1964. Venue lies in this court pursuant to title 28 U.S.C. sec. 1931(b) in that plaintiff's claim arose within the judicial district of Puerto Rico.

1

**II. PARTIES**

1. Plaintiff Gilberto Velez is a citizen of Aguadilla, Puerto Rico, single, of legal age and employed.

2. Plaintiffs' physical and postal address is: Camaseyes Ward #8 Paseo Providencia St., Aguadilla P.R. 00605 and PO Box 6080, Aguadilla, Puerto Rico 00604.

3. Codefendant Department of Homeland Security is an agency of the United States Government.

4. Codefendant Alejandro N. Mayorkas is the Secretary of the Department of Homeland Security.

5. Codefendants John Doe, Richard Roe and Mickey Moe are those persons who are in any way responsible to cause the facts that give raise for this claim.

6. Insurance companies XYZ had at all times relevant to this complaint, a policy or policies to cover for the damages caused to plaintiffs.

7. Co-defendant Roberto A. Arias was first level supervisor for plaintiff Gilberto Velez.

8. Co-defendant Michael E. Estrada was second level supervisor for plaintiff Gilberto Velez.

**III. FACTS**

1. In 2020, Plaintiff filed an EEOC complaint in case (HS-CBP-02097-2020). After that, he has been subject to a series of retaliatory actions adversely affecting his employment conditions.

2

2. It is well settled that a person who has filed an EEO complaint is protected from retaliation.

3. Defendants had knowledge of the fact that Plaintiff was engaged in the protected activity, when he was identified as a complainant against the agency.

4. The retaliatory actions against Plaintiff commenced immediately after the agency and its management officials knew of the Plaintiff's filing of the complaint.

5. Since Plaintiff participated in the aforementioned protected activity, Plaintiff has been continually submitted to retaliatory adverse employment actions.

**Reprisal after EEOC activity**

6. On August 2020, Plaintiff filed a EEOC complaint. On January 2021, a position for Patrol Agent in Charge(PAIC)and plaintiff was excluded from consideration. Later, in July 2021, an allegation of hostile work environment was filed against Plaintiff that was subsequently deemed unfounded. Prior to his whistleblowing, he had never been accused of improper conduct in more than 20 years of federal government service. Approximately a week after he received notification of this accusation against him, vacancy announcement at Ramey Border Patrol Sector USBP-IMP-11172395-WR was posted on USAJobs for Patrol Agent in Charge – Intelligence (PAIC-I). He was not considered for an interview, and he suspect it was because he was under investigation at the

3

time. Which resulted in depriving Mr. Velez of employment opportunities.

7. As a conclusion of the administrative inquiry to the hostile work accusation against Plaintiff, and after it was deemed unfounded, Division Chief (DC) Roberto Arias served him with an official notification labeling him as having anger issues; referring him to receive EAP counseling. He signed the notification as an acknowledgement, but verbally told DC Arias that he disagrees with his assessment. DC Arias said he didn't have anything to do with the decision.

8. Later, around January 2022, during a conference call with other agencies trying to coordinate the course of action regarding a group of non-migrants that had been detained, Plaintiff suggested a course of action and Mr. Wilmar Rodriguez who was acting as division chief at the time, shut him down by saying "ah that's not going to happen". Later, after the meeting and while walking together to the conference room, plaintiff inquire Mr. Rodriguez as to why he shut him down like that in front of other agencies and how that make the agency look divided and weak, Mr. Rodriguez started to ask him: "¿Do you know who are you talking to? while looking at his rank insignia. Then while inside the conference room, and plaintiff was already seated, Mr. Rodriguez stood in front of plaintiff in and intimidated manner licking his teeth and grabbing his gun. Plaintiff did not have his gun belt on or any other weapon with

4

him at that time. Then Mr. Rodriguez said; "this meeting is over". Notwithstanding, Mr. Wilmar Rodriguez contacted Acting Chief Patrol Agent to complaint alleging that he has been intimidated by plaintiff. As a result of that complaint Office of Professional Responsibility OPR was contacted, and an investigation was conducted until a decision was reached in February 2023, finding plaintiff guilty of misconduct, and proposing a 14-day suspension. Plaintiff was allowed to make an oral reply and the disciplinary action was reduced to a two-day suspension. DC Arias ordered him to serve his suspension on February 22 and 23, 2023.

9. In December 2022, during the investigation process of plaintiff's alleged misconduct, the standing PAIC-I (Ramon Fernandez) took a leave of absence from work to deal with an ongoing illness. Ramey Sector leadership decided to bring an out of sector Border Patrol employee and temporarily promote him as Acting PAIC-I with pay increase, lodging and per diem included, instead of affording plaintiff the same career enhancement detail. Bringing an out of sector employee to do something that plaintiff could do, does not represent or translate into a financial benefit to the Service, and prevents plaintiff from developing as a professional, which constitute retaliatory conduct.

10. On December 17, 2021, Acting Deputy Chief Michael Estrada excluded plaintiff from a staff meeting by telling him

5

to leave the room because PAIC Reyes, DPAIC Rodriguez and him had something else to discuss. About an hour later, he was brought back and ADCPA Estrada told him in front of PAIC Reyes and DPAIC Rodriguez that they had already made the decision to take two agents that were working on detail at the time in the Intelligence, out of intel, which is a decision that directly involved plaintiff since he is the Intelligence PAIC-I. Plaintiff enquire them as to why he was excluded since he is part of the team, and ADCPA said he didn't think about it like that. Plaintiff told ADCPA Estrada that he was going along with his instructions but that he did not agree because these two agents proved they could produce more quality work as intelligence agents than regular line agents. The meeting ended soon after that.

**Hostile work environment in retaliation after EEOC activity**

11. In November 2021, plaintiff withdrew his EEO complaint (HS-CBP-02097-2020) on the grounds that his son had been enrolled in Ramey School, and that was his only concern. Then, in December 2021, Division Chief Michael Estrada gifted to plaintiff a t-shirt with the words "dees nutz". Plaintiff understood that DC Estrada was referring to what had happened with EEOC dismissal. He asked DC Estrada what he meant by it. DC Estrada laughed but did not answer his question. He furthermore explained to Mr. Estrada the phrase's offensive origin, and told him it was an unprofessional move.

6

12. Later, on December 2021, Plaintiff was temporarily promoted to Acting Patrol Agent in Charge – Intelligence, and while on duty, he notified Acting PAIC Wilmar Rodriguez of a post circulating on social media about a group of non-citizens that had entered illegally into the U.S. nearby Ramey Station. Mr. Rodriguez replied by telling him to "worry about intel and let him worry about operations." He told Mr. Rodriguez that he probably misunderstood his intentions and that he was only trying to provide him with visibility of an ongoing situation out in the field. Mr. Rodriguez doubled down by repeating his comments. Plaintiff explained to DC Arias of what had transpired between Mr. Rodriguez and him. DC Arias opened his eyes as to being surprised by what he told him, but did not say anything. As a result of that incident, in January 2022, Plaintiff was terminated from my PAIC-I detail based on an allegation of misconduct filed by Mr. Wilmar Rodriguez, who was at that time Acting Division Chief, and working directly for Mr. Estrada, who was then Acting Deputy Chief Patrol Agent.

13. Acting DC Rodriguez indicated in an official memorandum that on January 5, 2022, plaintiff used offensive language ("bullshit") against him and acted in an intimidating manner. It is plaintiff's contention that Mr. Rodriguez lied in his official memorandum claiming that plaintiff followed him in a threatening demeanor. However, there was security video without audio that clearly showed Mr. Velez greeting Mr.

7

Rodriguez in the hallway, and Mr. Rodriguez following plaintiff the entire time into a conference room. The video also proved that plaintiff never invaded Mr. Rodriguez' personal space, and only showed him making hand gestures as to signaling towards the conference room.

14. In February 2023, Border Patrol Agent Carlos Gonzalez told plaintiff in front of another BPA, Mr. Carlos Rodriguez, that he had heard that plaintiff was going to come to work and shoot everyone. Plaintiff inquired him as to why he would say something like that to what BPA Gonzalez replied: "he was joking".

15. Later that day, plaintiff told DC Arias about the experience, and how he is being labeled as a potential active shooter and how it has been spread among the Ramey workforce, to what DC Arias rolled his eyes and said: "he didn't know what I was talking about".

16. Plaintiff has constantly brought to the attention of both DC Arias and DC Estrada the fact that he is the only second line supervisor in Ramey Sector without an office, and that he has had to sit on a desk in a room shared with other employees. He has asked them to afford him the same courtesy that they were afforded when they were SOS years ago; especially when there have always been empty offices that he knows of since at least 2018. DC Arias has always responded that that was their

8

decision, and that plaintiff was going to remain where he was, for the time being.

17. After the EEOC activity, Plaintiff has never been given the opportunity to serve in an acting capacity as Division Chief of LEOPD, even when DC Arias has had to take extended leave away from the office. Since having DC Arias as his direct supervisor, he has asked him why he has never had the career building opportunity to act as DC during his absence; to which DC Arias has always said that he still responds to his tasks, even if he is out of the office or off duty, and that "they" prefer to manage Ramey Sector that way.

18. The agency was aware of Plaintiff's previous EEOC activity, where he opposed the agency's discriminatory practices and adverse employment actions against him. The adverse employment action was taken with such proximity that retaliation can be inferred. There should be no doubt the retaliation was the motive.

## IV. PRIMA FACIE CASE

19. To establish a *prima facie* case of retaliation, a party must show that: (1) he engaged in protected opposition to discrimination or she participated in a covered proceeding; (2) he suffered an adverse employment action contemporaneously or subsequent to such participation or opposition; and (3) a causal connection exists between the protected activity and the adverse action. Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 (10th Cir.

9

1994)(Title VII retaliation); O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756 (9th Cir. 1996)(ADEA retaliation); and, Sands v. Runyon, 28 F.3d 1323, 1331 (2d Cir. 1994)(Rehabilitation Act).

**The Plaintiff engaged in protected activity**

20. Plaintiff had filed a complaint before the retaliatory events commenced.

21. To this matter, the Equal Employment Commission has ruled that an employee who filed an EEO complaint is protected from retaliation.

22. On the other hand, Plaintiff must prove management knowledge of the protected activity by a preponderance of the evidence. See Odom v. Postmaster General, 01842223 (1986). It is no necessary that the responsible management official have personal involvement in the prior EEO activity. For example, in Little v. Postmaster General, 01853250 (1987), the Commission found knowledge where the EEO activity appeared in the Plaintiff's personnel file, and the responsible management official had access to the file.

23. Consequently, the requisite of knowledge necessary in a retaliation case is established here through the fact that Plaintiff filed an EEO complaint against the agency.

24. Therefore, the retaliatory actions in this case commenced after the agency and its management officials knew of

10

that Plaintiff's had filed an EEO complaint against the agency in case (HS-CBP-02097-2020).

**Plaintiff suffered adverse employment action**

25. After filing his EEOC complaint, an allegation of hostile work environment was filed against Plaintiff that was subsequently deemed unfounded. Prior to his whistleblowing, he had never been accused of improper conduct in more than 20 years of federal government service.

26. He was deprived from employment opportunities when he was not considered for an interview, apparently because he was under investigation at the time due to the unfounded hostile work environment complaint filed against him after participating in a protected activity.

27. He received a disciplinary action for a 14-day suspension proposal and after replying contending the allegations, the disciplinary action was reduced to a two-day suspension.

28. After the EEOC activity, Plaintiff has never been given the opportunity to serve in an acting capacity as Division Chief of LEOPD

29. When a temporary opening was available for Acting Patrol Agent In Charge (which implied a pay increase, lodging and per diem, Ramey Sector leadership decided to bring an out of

sector Border Patrol employee instead of consider plaintiff for the position.

30. After Plaintiff EEOC protected activity, he has been excluded from staff meetings.

31. Plaintiff have had to endure unwelcome conduct motivated by his EEO-protected activities.

32. Plaintiff is the only second line supervisor in Ramey Sector without an office.

33. He has been unfounded labeled as a potential active shooter at work, to affect his employment conditions.

**Causal connection between the protected activity and the adverse action.**

34. Circumstantial evidence like temporal proximity is crucial in many retaliation claims because retaliatory employers rarely memorialize their retaliatory motives. In the absence of such "smoking gun" evidence, many retaliation claims are mostly, if not entirely, built on circumstantial evidence including temporal proximity. Furthermore, temporal proximity has been recognized as particularly powerful circumstantial evidence of retaliation. Short intervals of time between an employee's anti-discrimination efforts and an employer's allegedly retaliatory action can create powerful inferences of retaliation.

35. In the case at hand, the retaliatory actions commenced less than (6) months after Plaintiff filed the EEOC complaint against the agency. Therefore, the adverse employment action followed the protected activity within such period of time that retaliatory motive can be inferred.

36. As previously discussed, Plaintiff has established a Prima Facie case of Retaliation, therefore the burden shifts to defendant to justify the actions alleged as retaliatory.

## V. DAMAGES

37. Plaintiff Gilberto Velez civil rights were violated in retaliation for his involvement in protected activity. These damages are estimated on $500,000.00.

38. Plaintiff Gilberto Velez was humiliated, discriminated, harassed, and persecuted in retaliation for his involvement in protected activity. These damages are estimated on $250,000.00.

39. Plaintiff Gilberto Velez has suffered and continues to suffer, severe emotional distress, affliction, anguish, estimated on $250,000.00.

**WHEREFORE**, it is respectfully requested that this Honorable Court grant the sums herein requested for compensatory damages with interest and the reasonable costs of this action, and reasonable attorney's fees, grant plaintiff such other relief as it may deem proper under the circumstances and pursuant to Rule

38 (b) of the Federal Rules of Civil Procedure, plaintiffs also hereby request a trial by jury.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 31 day of January, 2024

**/s/ JOSE A. ARCE-DIAZ**
JOSE A. ARCE DIAZ ESQ.
Counsel for Plaintiff
USDC-PR No. 222508
PO Box 270-157
San Juan, P.R.  00928
TEL:  (787)720-3116 / 787-647-7007
jag.arcediaz@gmail.com

.

14